IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

DONALD LEE HINTON,

    Plaintiff,

v.                                                                            Civil Action No. 3:16CV222

P. McCABE, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Donald Lee Hinton, a Virginia inmate proceeding *pro se* and *in forma pauperis*, filed this 42 U.S.C. § 1983 action. Hinton contends that Defendant Dr. Daniel Calhoun denied him adequate medical care during his incarceration in the Lawrenceville Correctional Center ("LCC"). The matter is before the Court on Defendant Calhoun's Motion for Summary Judgment. (ECF No. 74.) Hinton has responded (ECF No. 85), and Defendant Calhoun filed a Reply (ECF No. 84). For the reasons that follow, the Motion for Summary Judgment will be GRANTED.

### I.    SUMMARY OF RELEVANT ALLEGATIONS

During the pendency of this litigation, Hinton has filed nearly everything as a "Motion," and has continuously submitted procedurally improper filings with made-up titles. Hinton's numerous submissions, including motions, piecemeal complaints, and piecemeal responses to the Defendant's dispositive motion have made the case difficult to process and his claims difficult to discern. In his operative Complaint (ECF No. 31),[1] Hinton contends that Defendant Calhoun

---

[1] By Memorandum Order entered on April 18, 2017, the Court construed this document entitled "((MOTION))" and on the second page "((MOTION TO AMEND))" and its attachments as Hinton's Complaint and informed Hinton that this new Complaint would supplant all other

violated his rights under the Eighth and Fourteenth Amendments because he was aware that Nurse McCabe "gave Plaintiff . . . a contaminated needle that gave Plaintiff the deadly Hepatitis C virus [and] then lied and said Plaintiff got the virus from a tattoo." (Compl. 2.) Hinton also vaguely alleges, in sum, that "when Defendant Dr. Calhoun knew Plaintiff got this deadly Hepatitis C virus he has completely refused any medical treatment and any medication to try and help the deadly virus." (*Id.*) As discussed below, to the extent these vague statements amount to claims for relief, they are entirely refuted by the record before the Court.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment must be rendered "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the responsibility to inform the court of the basis for the motion, and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the pleadings, depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation marks omitted). When the motion is properly supported, the nonmoving party must go beyond the pleadings and, by citing affidavits or "'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* (quoting former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

---

previously filed complaints. (ECF No. 32.) The Court employs the pagination assigned by the CM/ECF docketing system to Hinton's submissions. The Court corrects the capitalization, punctuation, and spelling in the quotations from Hinton's submissions.

2

In reviewing a summary judgment motion, the court "must draw all justifiable inferences in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). However, a mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251 (citation omitted). "[T]here is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party . . . upon whom the *onus* of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

In support of his Motion for Summary Judgment, Defendant Calhoun submits: (1) his own declaration (Mem. Supp. Mot. Summ. J. Ex. A, ECF No. 75–1 ("Calhoun Decl.")); and, (2) Hinton's extensive medical records during the relevant period (*id.* Ex. B, ECF No. 75–2).

At this stage, the Court is tasked with assessing whether Hinton "has proffered sufficient proof, in the form of *admissible* evidence, that could carry the burden of proof of his claim at trial." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). As a general rule, a non-movant must respond to a motion for summary judgment with affidavits or other verified evidence. *Celotex Corp.*, 477 U.S. at 324. In response, Hinton submits a sworn document entitled "Affidavit" (ECF No. 85–1), and several excerpts from what appears to be an unidentified medical journal and brochures (ECF Nos. 85–2 through 85–3).

The facts offered by affidavit must be in the form of admissible evidence. *See* Fed. R. Civ. P. 56(c). In this regard, the statement in the affidavit or sworn statement "must be made on personal knowledge . . . and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). Summary judgment affidavits must also "set out facts that would be admissible in evidence." *Id.* Therefore, "summary judgment affidavits cannot be conclusory or based upon hearsay." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996) (citing *Rohrbough v. Wyeth Labs., Inc.*, 916 F.2d 970, 975 (4th Cir. 1990); *see also Md. Highways Contractors Ass'n v. Maryland*, 933 F.2d 1246, 1252 (4th Cir. 1991)).

In his Affidavit, Hinton makes a number of statements that are of no value in assessing the propriety of summary judgment. Hinton's statements are either conclusory, immaterial, or simply disagree with arguments made by Defendant Calhoun.[2] Hinton's conclusory and inadmissible assertions will not be considered in evaluating the Motion for Summary Judgment. The medical journal excerpts and brochures with Hinton's edits also fail to constitute admissible evidence. *See Orsi v. Kirkwood*, 999 F.2d 86, 92 (4th Cir. 1993) (citation omitted) (explaining that "[i]t is well established that unsworn, unauthenticated documents cannot be considered on a motion for summary judgment."); *Lee v. Gurney*, No. 3:08CV161, 2009 WL 3208715, at *3 (E.D. Va. Sept. 30, 2009) (citations omitted). Thus, these submissions are not entitled to further

---

[2] For example, Hinton states that "Dr. Calhoun's statement. . . is false and not true. He the Defendant wants this court to believe in false statements, such as . . . Chronic Hepatitis C infection is not an immediately life-threatening condition." (ECF No. 85-1, at 1 (internal quotation marks removed).) Hinton also states that "[t]he Defendant also falsely stated that by Plaintiff being a diabetic this caused Plaintiff's Hepatitis C!" (*Id.*) Plaintiff's sworn testimony as to what he believes constitutes the appropriate, accepted standard of care or the cause of Hepatitis C is simply not admissible. *See Lee v. Gurney*, No. 3:08CV161, 2009 WL 3208715, at *2 (E.D. Va. Sept. 30, 2009) (citing *Bell v. Kolongo*, No. 1:03CV00502 (GBL), 2004 WL 3247156, at *4 (E.D. Va. Oct. 25, 2004)); *see also Pearson v. Ramos*, 237 F.3d 881, 886 (7th Cir. 2001).

consideration in assessing the propriety of summary judgment. While Hinton also swore to the contents of his Complaint, his Complaint again fails to constitute admissible evidence.[3] In light of the foregoing submissions and principles, the following facts are established for the purposes of the motion for summary judgment.

### III. SUMMARY OF UNDISPUTED FACTS

Defendant Calhoun has been employed as an institutional physician at LCC since July 2011 and has been practicing medicine for thirty-nine years. (Calhoun Aff. ¶ 1.) On the morning of April 15, 2015, Defendant Calhoun and Nurse McCabe were working at LCC. (Id. ¶ 4.) Nurse McCabe was responsible for that morning's diabetic call during which diabetic inmates reported for glucose testing, insulin, and other treatment as needed. (Id.) Hinton was among the inmates who reported for diabetic call that morning. (Id. ¶ 5.) Later that morning, Defendant Calhoun learned that Nurse McCabe may have reused a needle to administer insulin. (Id. ¶ 6.) Defendant Calhoun was concerned that any cross-contamination could place LCC's diabetic inmates at risk of contracting infectious diseases and the medical staff were instructed to obtain laboratory testing samples from the diabetic inmates so medical staff "could obtain a baseline for monitoring these inmates for infectious diseases." (Id. ¶ 7.) Medical staff obtained

---

[3] Hinton's allegations against Defendant Calhoun are nothing more than terse conclusions and fail to constitute admissible evidence.

On March 19, 2018, well after Calhoun filed his Reply to Hinton's Response in Opposition, the Court also received a document from Hinton entitled, "'Motion' Motion to Dismiss Defendant Doctor Calhoun's Motion for Summary Judgment, and Affidavit of Daniel Calhoun, Jr. MD Due to False Statement That Have Legal Conflict and Dispute." (ECF No. 90.) Hinton also attaches a second Affidavit ("Second Affidavit") and excerpts from yet another unidentified medical article in support of his "Motion." (ECF No. 90–1.) Whatever this submission may be, it is procedurally improper at this juncture. Even if this submission and the accompanying Second Affidavit were properly before this Court, it too contains nothing more than legal arguments, conclusory immaterial statements, and unauthenticated documents, and would fail to constitute admissible evidence.

a laboratory testing sample from Hinton approximately two hours after the morning diabetic call and the sample was sent out for testing the same day. (*Id.* ¶ 8.)

On June 8, 2015, the medical staff at LCC received the test results for Hinton. (*Id.* ¶ 9.) The test results indicated that Hinton tested positive for Hepatitis B and C antibodies. (*Id.*) On July 1, 2015, medical staff obtained blood samples from Hinton and sent the samples out for repeat testing. (*Id.* ¶ 10.) On July 7, 2015,[4] the laboratory again reported that Hinton tested positive for both Hepatitis B and C antibodies. (*Id.*) On July 14, 2015, medical staff obtained additional samples from Hinton and sent the samples out for testing to ascertain whether Hinton was positive for Hepatitis C ribonucleic acid ("RNA"). (*Id.* ¶ 11.) On July 17, 2015, the laboratory reported that Hinton was positive for Hepatitis C RNA. (*Id.*)

On October 2, 2015, medical staff obtained additional samples from Hinton and Defendant Calhoun ordered testing for the RNA genotype for Hinton's Hepatitis C. (*Id.* ¶ 12.) On October 9, 2015, the laboratory returned results indicating that Hinton's RNA genotype was 1b, a less prevalent form of Hepatitis C. (*Id.*) As of April 2015, there were three inmates at LCC other than Hinton who were known to be infected with Hepatitis C genotype 1b and none of those inmates were diabetic. (*Id.* ¶ 13.)

> Defendant Calhoun avers that
>
> [t]o a certainty, Hinton was infected with Hepatitis C long before [the] incident [on April 15, 2015]. We obtained laboratory test samples from Hinton within hours of the cross-contamination incident. The testing laboratory detected Hepatitis C and Hepatitis B antibodies in Hinton's test samples. It takes several weeks for the immune system to produce Hepatitis C antibodies in sufficient quantity to return a positive laboratory test. Thus, Hinton's belief that he first became infected with Hepatitis C on April 15, 2015 is a medical impossibility.

---

[4] Defendant Calhoun mistakenly states in his Affidavit that the laboratory reported these results on July 7, 2017, but the records reflect that Defendant Calhoun meant to state July of 2015 instead. These records were "resulted" on July 3, 2015 and printed by LCC July 7, 2015. (*See* ECF No. 75–2, at 64.)

Hinton could only have contracted Hepatitis C several weeks, or even years, prior to April 15, 2015.

(*Id.* ¶ 14.) To the extent that Hinton indicates that he has had many blood tests during his incarceration and had never tested positive for Hepatitis C before, Defendant Calhoun explains that the laboratory reports prior to April 15, 2015 do not reflect that Hinton was tested for Hepatitis C on those dates. (*Id.* ¶ 21.)

Defendant Calhoun explains that the nurse suspected of cross-contaminating the insulin was terminated by LCC because the incident was a breach of medical protocol. (*Id.* ¶ 22.) Defendant Calhoun was not aware that Nurse McCabe was cross-contaminating needles at the time of the incident. (*Id.*)

Defendant Calhoun explains that chronic Hepatitis C is not an immediately life-threatening condition, and most persons with Hepatitis C generally have a normal life expectancy. (*Id.* ¶ 15.) Defendant Calhoun explains that the danger with Hepatitis C is that it can lead to cirrhosis of the liver; however, it can take years or decades for persons infected with Hepatitis C to develop cirrhosis. (*Id.*) Defendant Calhoun explains that those inmates with a high fibrosis score, which is indicative of cirrhosis, are eligible for certain treatments. (*Id.* ¶¶ 17–18.) Hinton's most recent chronic care visit was November 30, 2017 and his laboratory tests reflected a very low fibrosis score and have generally reflected liver values in the normal range for a healthy adult. (*Id.* ¶¶ 19, 20.) Defendant Calhoun explains that Hinton's normal liver values are not uncommon and he "may go his whole life without exhibiting concerning liver values." (*Id.* ¶ 20.)

### IV. EIGHTH AMENDMENT

In order to survive summary judgment for a claim under 42 U.S.C. § 1983, a plaintiff must "affirmatively show[] that the official charged acted personally in the deprivation of the

plaintiff's rights." *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977)). Furthermore, "[t]he doctrine of *respondeat superior* has no application" under § 1983. *Id.* (citing *Vinnedge*, 550 F.2d at 928). Hinton must demonstrate that each defendant had "personal knowledge of and involvement" in the alleged constitutional deprivation to establish liability under § 1983. *Id.* To survive a motion for summary judgment on an Eighth Amendment claim,[5] Hinton must demonstrate that Defendant Calhoun acted with deliberate indifference to his serious medical needs. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001). A medical need is "serious" if it "has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong of a deliberate indifference claim requires the plaintiff to demonstrate that a particular defendant actually knew of and disregarded a substantial risk of serious harm to his person. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

---

[5] "[I]t is now well established that the Eighth Amendment 'serves as the primary source of substantive protection to convicted prisoners,' and the Due Process Clause affords a prisoner no greater *substantive* protection 'than does the Cruel and Unusual Punishments Clause.'" *Williams v. Benjamin*, 77 F.3d 756, 768 (4th Cir. 1996) (quoting *Whitley v. Albers*, 475 U.S. 312, 327 (1986)). Although Hinton brings his claims under the Eighth and Fourteenth Amendments, the Court evaluates Hinton's claims solely under the Eighth Amendment.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (citing *Farmer*, 511 U.S. at 837). Thus, to survive a motion for summary judgment under the deliberate indifference standard, a plaintiff "must show that the official in question subjectively recognized a substantial risk of harm . . . . [and] that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997)).

"To establish that a health care provider's actions constitute deliberate indifference to a serious medical need, the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990) (citing *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).[6] In evaluating a prisoner's complaint regarding medical care, the Court is mindful that, "society does not expect that prisoners will have unqualified access to health care" or to the medical treatment of their choosing. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103–04). Absent exceptional circumstances, an inmate's disagreement with medical personnel with respect to a course of treatment is insufficient to state a cognizable constitutional claim, much less to demonstrate deliberate indifference. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)). In this regard, the right to medical treatment is limited to

---

[6] The Court recognizes that a portion of *Miltier* was overruled in part on other grounds by *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). *See Goodman v. Runion*, 676 F. App'x 156, 160 (4th Cir. 2017).

9

that treatment which is medically necessary and not to "that which may be considered merely desirable." *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977).

### A. The Cross-Contaminated Needle

Hinton first contends that Defendant Calhoun violated his rights under the Eighth Amendment because he was aware that Nurse McCabe "gave Plaintiff . . . a contaminated needle that gave Plaintiff the deadly Hepatitis C virus [and] then lied and said Plaintiff got the virus from a tattoo." (Compl. 2.) Hinton demonstrates no deliberate indifference to his medical needs by Defendant Calhoun. With respect to Hinton's first contention, Defendant Calhoun was not personally involved in the cross-contamination of needles on April 15, 2015 and only learned about the incident later that day. *See Wright*, 766 F.2d at 850. Moreover, the record conclusively demonstrates that Hinton did not contract Hepatitis C from the incident on April 15, 2015.

### B. Denial of Medical Care for Hepatitis C

Hinton vaguely suggests, in sum, that "when Defendant Dr. Calhoun knew Plaintiff got this deadly Hepatitis C virus he has completely refused any medical treatment and any medication to try and help the deadly virus." (Compl. 2.) Hinton fails to identify with any specificity what medical treatment he desired and was denied by Defendant Calhoun. Moreover, Hinton simply lacks entitlement to the medical care of his choosing. *Hudson*, 503 U.S. at 9 (citing *Estelle*, 429 U.S. at 103–04.) For this reason alone, Hinton's claim fails.

Moreover, Hinton's vast medical record submitted by Defendant Calhoun as an exhibit refutes Hinton's statement that Defendant Calhoun "completely refused any medical treatment." (Compl. 2.) When Defendant Calhoun learned of the potential cross-contamination of the needle during the diabetic call, he ordered laboratory tests in order to have baseline results for Hinton.

From that initial test, Defendant Calhoun learned that Hinton tested positive for Hepatitis antibodies, and he ordered further testing to ascertain the type and stage of the disease. (Calhoun Aff. ¶¶ 7–12.) As Defendant Calhoun explains, the danger of Hepatitis C is that it can lead to cirrhosis and inmates are monitored for a high fibrosis score that is indicative of cirrhosis. (Calhoun Aff. ¶ 18.) Hinton has regular chronic care appointments for his Hepatitis C and has been monitored for any change in his fibrosis score and liver values. (*See, e.g.*, ECF No. 75-2, at 4, 11, 19.) At his most recent follow-up on November 30, 2017, laboratory tests demonstrated that Hinton's fibrosis score was low and that his liver values were in the normal range for a healthy adult. (*Id.* ¶¶ 19–20.) Thus, Hinton was not exhibiting symptoms of cirrhosis, the danger associated with Hepatitis C. *See Lee v. Gurney*, No. 3:08CV161, 2011 WL 2681225, at *5–6 (E.D. Va. July 8, 2011) (explaining that refusal to provide certain desired treatments for Hepatitis C is not deliberate indifference when not a medical necessity).

Hinton wholly fails to demonstrate that Defendant Calhoun knew of and disregarded an excessive risk to Hinton's health. *See Farmer*, 511 U.S. at 837. Hinton fails to establish that Defendant Calhoun actually perceived that Hinton faced a substantial risk of harm by refusing to provide Hinton with some unspecified treatment. To the extent that Hinton disagrees with Defendant Calhoun's method of monitoring and assessment of Hinton's Hepatitis C, Hinton's disagreement fails to demonstrate deliberate indifference by Defendant Calhoun. *See Wright*, 766 F.2d at 849 (citing *Gittlemacker*, 428 F.2d at 6); *Brown*, 240 F.3d at 389 (alteration in original) (citations omitted) (internal quotation marks omitted) (holding that "an official who responds reasonably to a known risk has not disregard[ed] an excessive risk to inmate health or safety . . . and has therefore not acted with deliberate indifference."). Defendant Calhoun's method of monitoring and assessing Hinton's Hepatitis C certainly is not "so grossly

incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851 (citation omitted). Hinton fails to demonstrate that Defendant Calhoun denied him adequate medical care for his Hepatitis C diagnosis. Hinton's claims against Defendant Calhoun will be DISMISSED.

## V. OUTSTANDING MOTION FILED BY HINTON

On January 5, 2018, Hinton filed a "'Motion' Motion for Summary Judgment with Roseboro Notice by Plaintiff Donald Lee Hinton." ("Motion for Summary Judgment," ECF No. 71.) This Motion for Summary Judgment was filed prior to either Defendant filing a dispositive motion. Hinton's Motion for Summary Judgment essentially claims that he is entitled to relief without any persuasive legal argument in support. Accordingly, Hinton's Motion for Summary Judgment (ECF No. 71) is DENIED.

## VI. CONCLUSION

Defendant Calhoun's Motion for Summary Judgment (ECF No. 74) will be GRANTED. Hinton's Motion for Summary Judgment (ECF No. 71) is DENIED. Hinton's claims against Defendant Calhoun are DISMISSED.

An appropriate Order shall issue.

Date: 3/29/18
Richmond, Virginia

/s/
John A. Gibney, Jr.
United States District Judge